2019 IL App (1st) 171127

No. 1-17-1127

Opinion filed July 16, 2019

Second Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 05 CR 17564 |
| | ) | |
| REFUGIO BLANCAS, | ) | Honorable |
| | ) | Marc W. Martin, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justice Pucinski concurred in the judgment and opinion.
Justice Mason specially concurred, with opinion.

**OPINION**

¶ 1     The only question formally presented by Refugio Blancas's appeal is whether his appointed appellate counsel should be permitted to withdraw under *Pennsylvania v. Finley*, 481 U.S. 551 (1987). We take the unusual step of disposing of counsel's motion in a published opinion. See, *e.g.*, *In re Brazelton*, 237 Ill. App. 3d 269 (1992) (denying motion to withdraw). The procedural history of Blancas's case raises an additional question about our jurisdiction that had been resolved in this district but was recently reopened by our supreme court. See *People v.*

*Griffin*, 2017 IL App (1st) 143800, ¶ 26, *leave to appeal allowed*, No. 122549 (Ill. Nov. 22, 2017), *appeal dismissed and judgment vacated in light of* Illinois Supreme Court Rule 472, No. 122549 (Ill. Apr. 18, 2019) (supervisory order), http://illinoiscourts.gov/SupremeCourt/Announce/2019/122549.pdf [https://perma.cc/9D42-L8BL]. Dissenting from the issuance of the supervisory order in *Griffin*, Justice Burke (along with Justices Kilbride and Neville) would have affirmed our judgment in *Griffin* on alternate grounds. We agree with Justice Burke's reasoning and take this opportunity to revive the core holding of *Griffin*.

¶ 2 We find that, strictly construing Blancas's filing as a motion to correct the mittimus, we lack jurisdiction to consider his appeal as the trial court lacked jurisdiction over his motion in the first instance. Alternatively, we find that Blancas's motion raises no issues of arguable merit, even if we were to liberally recharacterize it as a postconviction petition over which we had jurisdiction. Either way, we agree with appointed counsel, grant counsel's motion to withdraw, and affirm the trial court's judgment.

¶ 3                           Background

¶ 4 In 2006, Blancas entered a "blind plea" of guilty to two counts of aggravated driving under the influence (DUI) and two counts of reckless homicide. The court sentenced Blancas to two concurrent terms of 18 years' imprisonment for one aggravated DUI count and one reckless homicide count, respectively. Blancas did not move to withdraw his plea or file a direct appeal.

¶ 5 In 2008, with the assistance of counsel, Blancas filed an initial petition for postconviction relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2008)). In the petition, Blancas alleged his plea was involuntary and plea counsel was ineffective because counsel incorrectly advised him that he would serve less than half of his sentence because he would get "day per day" sentencing credit. He attached letters from plea counsel to the petition,

advising Blancas not to challenge his sentence and admitting to incorrectly advising him about the time he would spend in prison. The court docketed the petition for second-stage proceedings and later dismissed it on July 23, 2010. Postconviction counsel did not file an appeal from the dismissal.

¶ 6    In July 2012, Blancas filed a *pro se* motion for leave to file late notice of appeal from his guilty plea and sentence in this court. We denied leave to file late notice of appeal because Blancas was appealing from an order entered on April 12, 2006, and the appropriate filing would have been a petition for postconviction relief. *People v. Blancas*, No. 1-12-2061 (2012) (unpublished dispositional order).

¶ 7    In October 2012, Blancas filed a *pro se* successive postconviction petition alleging his sentence was excessive and again contending plea counsel was ineffective for incorrectly advising him about the time he would serve. The trial court dismissed the petition, finding he did not request leave to file a successive postconviction petition and, in any event, his claims could not satisfy the cause and prejudice test.

¶ 8    In April 2017, Blancas filed a *pro se* "motion to correct mittimus," arguing he was "led to believe" that if he pled guilty he would receive a sentence of "18 years at 50 Percent (DAY FOR DAY)" and that he had served 50% of his sentence. The trial court denied Blancas's motion, finding "to the extent [the motion] could even be construed as *** something other than a motion to correct mittimus, it's seeking to undo a judgment" and was filed "well after a two-year period." The court also found Blancas's sentence was "governed by the credit law," which required him to serve 85% of his sentence. Blancas timely appealed.

¶ 9    Appointed counsel from the Office of the State Appellate Defender (OSAD) has filed a motion for leave to withdraw as appellate counsel, citing *Finley*, 481 U.S. 551 (1987), and

submitted a memorandum in support of his motion. Counsel has reviewed the record and concluded that an appeal would be without arguable merit. Counsel also sent copies of the motion and memorandum to Blancas, who was advised that he may submit any points in support of his appeal. He has not responded.

¶ 10                                             Analysis

¶ 11     We agree with counsel that Blancas's filing in the circuit court raises no issue of arguable merit and grant OSAD's motion to withdraw as counsel. We ordinarily would not grant a motion to withdraw as counsel by way of published opinion (see Ill. S. Ct. R. 23(c)(6) (eff. Apr. 1, 2018)), but Blancas's situation poses an odd jurisdictional problem that our supreme court has not addressed and about which it appears to remain divided. Counsel's motion does not expressly call our jurisdiction into question, but we have a duty to consider it *sua sponte* in every appeal. *MidFirst Bank v. McNeal*, 2016 IL App (1st) 150465, ¶ 12.

¶ 12     Blancas's filing in the circuit court is titled "motion to correct mittimus." Under our previous precedent, this would deprive us of jurisdiction to consider Blancas's appeal because the denial of such a motion is not an appealable order. See *Griffin*, 2017 IL App (1st) 143800, ¶ 26. The supreme court vacated our opinion in *Griffin* by supervisory order, and so we cannot rely on it as precedent. That said, supervisory orders themselves are not precedent either. See *Berg v. Allied Security, Inc.*, 193 Ill. 2d 186, 194 (2000) (Freeman, J., specially concurring) (disapproving of citation to supervisory orders by lead dissent "because they are not binding authority"); *id.* at 201 (McMorrow, J., dissenting) (joining Justice Freeman's observations about supervisory orders); *People v. Boykin*, 94 Ill. 2d 138, 146 (1983) (supervisory orders requiring compliance with appellate court precedent did not "indicate [court's] approval thereof"); *People v. Jackson*, 154 Ill. App. 3d 320, 324 (1987) ("supervisory orders are unpublished, recite no

facts, and provide no rationale upon which the principles of *stare decisis* may attach"). So, the supreme court's supervisory order vacated the judgment of *Griffin*, but it did not rule on the merits. Just like in *Boykin*, where the supreme court found that an order requiring compliance with precedent did not express the court's approval of that precedent, the supreme court's order vacating our opinion in *Griffin* does not express the court's disapproval of that analysis.

¶ 13    Indeed, it appears that a substantial number of justices on our supreme court agree with our disposition in *Griffin* on alternate grounds. See *Griffin*, No. 122549, ¶ 11 (Ill. Apr. 18, 2019) (Burke, J., dissenting, joined by Kilbride and Neville, JJ.) ("I would affirm on grounds different than those set forth in the appellate court's decision."). We take this opportunity to resuscitate our core holding in *Griffin*. We find that we lack jurisdiction over appeals from denials of motions to correct the "mittimus" that are not aimed at either clerical errors or the other errors enumerated in the new Rule 472 (Ill. S. Ct. R. 472 (eff. May 17, 2019)).

¶ 14    In *Griffin*, the defendant was arrested on weapons charges and, while in custody, police also linked him to a burglary offense. *Id.* ¶ 3. In the weapons case, the defendant pleaded guilty and was awarded 682 days of presentence custody credit against his 5-year sentence. *Id.* ¶ 14. In the burglary case, the defendant pleaded guilty and was awarded only 316 days of presentence custody credit against his 6-year sentence. *Id.* ¶ 15. In neither case did the defendant move to withdraw his pleas or attempt to appeal. *Id.* ¶ 16. Instead, he filed a "Motion For Order *Nunc Pro Tunc* (Correcting Mittimus)," arguing that he was short-changed on his custody credit in the burglary case because he had been in custody for both offenses starting at the same time. *Id.* The trial court denied the motion, and the defendant appealed. *Id.* ¶¶ 17-18.

¶ 15    In our court, the defendant abandoned his claims seeking custody credit and instead attacked various fines and fees that had been assessed. *Id.* ¶ 2. We found that the trial court had

jurisdiction to entertain the defendant's motion because clerical errors on the sentencing judgment could be challenged at any time, but *we* lacked jurisdiction because the denial of a motion to correct the mittimus was not a final appealable order. *Id.* ¶ 21 (citing 2017 IL App (1st) 143800, ¶¶ 11, 13, 22, 25).

¶ 16    Justice Burke, joined by Justices Kilbride and Neville, agreed that we had properly stated the rule about a trial court's jurisdiction to correct clerical errors at any time. *Id.* ¶ 23. But, she would have found that we "misapplied it under the facts" because the defendant had not claimed that the sentencing order did not match the trial court's sentencing pronouncement; instead, he had claimed that the trial court made a substantive mistake in calculating custody credit. See *id.* ¶¶ 23, 25. Justice Burke went further, endorsing a project embarked on by our colleagues in the Fourth District, to remove the " 'anachronism' " (*id.* ¶ 29) of referring to a defendant's sentencing order as a "mittimus" at all. See *id.* ¶ 27-29 (citing *People v. Scheurich*, 2019 IL App (4th) 160441, ¶¶ 23-27, *People v. Coleman*, 2017 IL App (4th) 160770, ¶ 19, and *People v. Morrison*, 2016 IL App (4th) 140712, ¶¶ 32-38 (Harris, J. specially concurring)).

¶ 17    We need neither join nor depart from this line of cases because we agree with Justice Burke's reasoning that the trial court lacked jurisdiction over Blancas's motion because it was "seeking to undo a judgment," not correct a clerical error on the paper it was written on (whatever we call it). The substance of Blancas's "motion" was that his counsel had led him to believe that he would get day-for-day credit on his sentence when, in reality, he was required to serve his sentence at 85%. See 730 ILCS 5/3-6-3(a)(2.3) (West 2008). We agree with the trial court that this does not represent an attempt to make the written sentencing order conform to the trial court's oral pronouncement; instead, it is an attempt to argue that his plea was involuntary because he was misinformed about the truth-in-sentencing consequences that resulted from it.

Because Blancas's motion was filed years after the judgment was entered, well beyond the 30 days he had to move to vacate his plea, the trial court was divested of jurisdiction to entertain his motion at all. See *Griffin*, No. 122549, ¶ 32 (Ill. Apr. 18, 2019) (Burke, J., dissenting, joined by Kilbride and Neville, JJ.) (citing *People v. Flowers*, 208 Ill. 2d 291, 303 (2003)). Where the trial court lacks jurisdiction, so do we. See *Flowers*, 208 Ill. 2d at 307.

¶ 18    So, while our decision in *Griffin* was vacated, we find that its core holding remains correct. See *Griffin*, No. 122549, ¶ 32 (Ill. Apr. 18, 2019) (Burke, J., dissenting, joined by Kilbride and Neville, JJ.) ("I would affirm the appellate court's judgment that it lacked jurisdiction to consider defendant's appeal ***."). We lack jurisdiction to hear Blancas's appeal because the trial court lacked jurisdiction to entertain his motion.

¶ 19    Like Justice Burke did in *Griffin*, we will also consider (and reject) the possibility that Rule 472 alters our analysis. The supreme court attempted to provide clarity to the trial court's power to amend its sentencing orders by promulgating a rule that allows it to reassert jurisdiction in four circumstances: (i) where the defendant asserts error in the calculation of fines, fees, or costs; (ii) where the defendant asserts error in application of *per diem* credit against fines; (iii) where the defendant asserts error in calculation of presentence custody credent; and (iv) where the defendant asserts "clerical errors" in the written sentencing order reflecting discrepancies between the record and the court's actual judgment. Ill. S. Ct. R. 472(a)(1)-(4) (eff. May 17, 2019). Justice Burke would not have applied Rule 472 to Griffin's appeal but noted that "nothing prohibit[ed] defendant from seeking relief in the circuit court" under the rule. *Griffin*, No. 122549, ¶ 34 (Ill. Apr. 18, 2019) (Burke, J., dissenting, joined by Kilbride and Neville, JJ.). Blancas's challenge does not fall into one of the four enumerated categories set out in Rule 472

and so the promulgation of the rule does not impact our analysis because the trial court would not have jurisdiction over his "motion" regardless.

¶ 20    We find that we lack jurisdiction over Blancas's motion to correct the mittimus if we strictly construe his filing as it is labeled. We go on, however, because in the procedural context of a *Finley* motion, both counsel and the court have the obligation to consider all arguments of potential merit. OSAD's memorandum in support of its *Finley* motion admits that there is a "potentially meritorious" argument that the trial court should have characterized Blancas's motion to correct the mittimus as a postconviction petition. We agree. The trial court has discretion to recharacterize a *pro se* filing as a postconviction petition "even where the *pro se* pleading is clearly labeled." *People v. Shellstrom*, 216 Ill. 2d 45, 51 (2005).

¶ 21    Recharacterization serves several important goals, including proper framing of the issues and the appointment of appellate counsel should the trial court dismiss the petition. *Id.* at 51-52. Most importantly, however, recharacterization "avoids the possible harshness of holding a *pro se* litigant to the letter of whatever label he [or she] happens to affix to his [or her] pleading, even when his [or her] claims are such that they could more appropriately be dealt with under a different heading." *Id.* at 52. We find this interest—avoiding an unnecessarily harsh result—applicable, considering that a literal reading of the title would require dismissal.

¶ 22    OSAD correctly notes the potential merit in construing Blancas's "motion" as a postconviction petition raising ineffective assistance of counsel, but we also agree with OSAD that doing so undoubtedly requires affirmance of the trial court's judgment. As OSAD points out, "Blancas has twice raised identical claims in previous collateral proceedings and did not appeal either dismissal." His claim is, accordingly, frivolous because it was forfeited. *People v. Blair*,

215 Ill. 2d 427, 443-45 (2005) (including forfeiture as ground for finding petition to be "frivolous or *** patently without merit" under the Act).

¶ 23  Why take this circuitous route to the same end? *Finley* procedures (and the corollary *Anders* procedures in direct appeals (*Anders v. California*, 368 U.S. 787 (1967)) are not without their criticisms as the dissent in *Finley* pointed out: " 'It is one thing for a prisoner to be told that appointed counsel sees no way to help him, and quite another for him to feel sandbagged when counsel appointed by one arm of the government seems to be helping another to seal his doom.' " *Finley*, 481 U.S. 551, 568 (1987) (Brennan, J. dissenting, joined by Marshall, J.) (quoting *Suggs v. United States*, 391 F.2d 971, 974 (D.C. Cir. 1968)). *Suggs* itself was more charitable to appointed counsel than the isolated quotation might suggest:

> "Appointed counsel is of course not required to accept a client's views by asserting points his good conscious would reject even at the loss of a handsome fee. *** But the courts must do what can reasonably be done to leave indigent prisoners with the impression that they have been dealt with fairly." *Suggs*, 391 F.2d at 974.

We cannot give that impression by dismissing an appeal when there is concededly "potential merit" to an interpretation of a *pro se* filing that allows us to substantively address a petitioner's claims. OSAD's *Finley* motion is granted, and we affirm the judgment of the circuit court of Cook County.

¶ 24  Affirmed.

¶ 25  JUSTICE MASON, specially concurring:

¶ 26  This motion to withdraw, which I agree should be granted, is not the appropriate vehicle to revive the reasoning of our vacated opinion in *Griffin*. Therefore I concur only in the result.

---

**No. 1-17-1127**

---

| | |
|---|---|
| **Cite as:** | *People v. Blancas*, 2019 IL App (1st) 171127 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 05-CR-17564; the Hon. Marc W. Martin, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Patricia Mysza, and Christopher G. Evers, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, for the People. |

---